DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Co-Counsel for Attis Properties, Inc.*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.

and

ROSENFELD & KAPLAN, LLP
*Co-Counsel for Attis Properties, Inc. and*
*Counsel to Bonni Stanley, Marilyn Shendell, Douglas*
*Scibelli, Sanley Company, RNG WEA LLC,*
*Jacqueline Martinez, Keith Hummel, Philip Healy,*
*Ellen Goldstein, Philip Goldstein, Stacey Gendels,*
*Glen Feller, East 64th Street Realty Partners LLC,*
*Robert Cicero, Angie Brown, Joshua Brown, Rella*
*Fogliano, and Joseph Breda*
1180 Avenue of the Americas, Suite 1920
New York, New York 10036
(212) 682-1400
Tab Rosenfeld, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

                                                        Chapter 11
MICHAEL P. D'ALESSIO,                  Case No. 18-22552-rdd

                    Debtor.
---------------------------------------------------------------X

**APPLICATION FOR AN ORDER DIRECTING THE PRODUCTION OF
DOCUMENTS AND SCHEDULING AN EXAMINATION OF THE
<u>DEBTOR PURSUANT TO BANKRUPTCY RULE 2004</u>**

**TO: THE HONORABLE ROBERT D. DRAIN:**
    **UNITED STATES BANKRUPTCY JUDGE:**

        Attis Properties, Inc. ("Attis"), through its co-counsel DelBello, Donnellan, Weingarten,

Wise & Wiederkehr, LLP and Rosenfeld & Kaplan LLP, and Bonni Stanley, Marilyn Shendell,

Douglas Scibelli, Sanley Company, RNG WEA LLC, Jacqueline Martinez, Keith Hummel,

Philip Healy, Ellen Goldstein, Philip Goldstein, Stacey Gendels, Glen Feller, East 64th Street Realty Partners LLC, Robert J Cicero, Angie Brown, Joshua Brown, Rella Fogliano, and Joseph Breda (collectively with Attis, the "Applicants") through their counsel Rosenfeld & Kaplan LLP, hereby file this Application pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, to direct the production of documents and scheduling examinations of Michael P. D'Alessio (the "Debtor" or "D'Alessio").  In support of the Application, the Applicants respectfully set forth as follows:

## JURISDICTION AND VENUE

1.   The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The statutory basis for relief requested herein is Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.   The Applicants are each creditors of the Debtor, and investors in a number of real estate projects devised by the Debtor, which are described herein as follows:

a)   a real estate project located at 227 East 67th Street, New York, New York, and involving certain non-debtor entities: 227 E 67th Street Holding LLC, 227 E 67th Associates, LLC, Michael Paul Enterprises, LLC and Bluestone 67 LLC;

b)   a real estate project located at 15-17 Circle Road, Scarsdale, New York, and involving certain non-debtor entities/individuals: 15-17 Circle Holding LLC, 15 Circle Rd – MBI LLC, 17 Circle Rd – MBI LLC, William Orrico, Michael Paul Enterprises, LLC, and MBI Partners LLC;

2

      c)      a real estate project located at 41-45 Middle Pond Road, Southampton, New York, and involving certain non-debtor entities: 41-45 MPR Holding LLC, 41 Middle Pond Road Associates LLC, 43 Middle Pond Road Associates LLC, 45 Middle Pond Road Associates LLC, Michael Paul Enterprises, LLC, and 3700 Tremont Associates, Inc.;

      d)      a real estate project located at 184 East 64th Street, New York, New York, and involving certain non-debtor entities: 184 East 64th Street Holding LLC, 184 East 64th Street Associates LLC, Michael Paul Enterprises, LLC, and Bluestone 184 LLC;

      e)      a real estate project located at 145-147 East 62nd Street, New York, New York, and involving certain non-debtor entities/individuals: 145-147 East 62nd Street Holding LLC, 145-147 East 62nd Street Associates LLC, Anthony Carbone, Michael Paul Enterprises and FCP 145 Holding LLC;

      f)      a real estate project located at 163-165 East 62nd Street, New York, New York, and involving certain non-debtor entities: 163-165 East 62nd Street Holding, LLC, 163-165 East 62nd Street Associates LLC, Michael Paul Enterprises, LLC, and Bluestone 163-165 LLC; and

      g)      a real estate project located at 3 Sandpiper Court, Westhampton, New York, and involving certain non-debtor entities: 3 Sandpiper Court Holding LLC, 3 Sandpiper Court LLC, Michael Paul Enterprises, LLC, and Bluestone Sandpiper LLC.

The above-described projects shall be collectively referred to as the "D'Alessio Projects." The non-debtor entities and individuals with respect to each of the D'Alessio Projects shall be collectively referred to as the "Non-Debtor Entities."

      5.      The Applicants commenced a series of related actions (collectively, the "Actions") against the Debtor in March 2018 alleging, inter alia, fraud, conversion and breach of fiduciary duty and seeking damages exceeding eighteen million dollars ($18,000,000). A copy

of each of the Complaints in the seven related Actions are annexed as **Exhibits A-G**. The Debtor has asserted in those Actions that the Non-Debtor Entities enjoy the protections of the automatic stay in effect in the Debtor's Chapter 7 case. Accordingly, the Applicants intend to seek a comfort order from this Court with respect to their continued litigation against the Non-Debtor Entities.

6. Counsel for the Applicants have reviewed the Schedules of Assets and Liabilities and Statement of Financial Affairs (the "Schedules") filed by the Debtor and believe that certain information contained therein has been misrepresented, and extensive relevant financial information has been omitted.

7. For example, as to the 15-17 Circle Road Project:

a) Investors contributed approximately $600,000 to 15-17 Circle Holding LLC ("Circle Holding"), an entity which D'Alessio is co-manager of, yet the Schedules contain no explanation as to where this money actually went.

b) Despite little to no construction being done on the 15-17 Circle Road Project, Michael Paul Enterprises, LLC ("MPE"), an entity 100% owned by D'Alessio, has billed in excess of $1.5 million in construction charges. The Schedules are devoid of information as to where the $1,344,638 paid to MPE for said construction has gone.

c) Furthermore, in April and May of 2016, D'Alessio "borrowed" approximately $2.3 million from Circle Holding. The Schedules contain no explanation for the basis of this transaction. Similarly, in or about July 2017, D'Alessio reinvested $2.3 million into Circle Holding. Again, the Schedules are lacking information detailing the source and use of these funds.

8. As to the East 64th Street Project:

4

a) The Investor contributed approximately $1.8 million to 184 East 64th Holding LLC ("East 64th Holding"), an entity controlled by D'Alessio[1], yet the Schedules contain no explanation as to where this money actually went.

b) Similarly, as per the PPM, Bluestone 184 LLC, an entity which D'Alessio has a 50% ownership interest in, was supposed to invest $2,423,600. However, it is believed that D'Alessio and Bluestone 184 LLC used funds from MPE, an entity in which D'Alessio is a 100% owner, to make the equity contribution of Bluestone 184 LLC. Debtor failed to adequately disclose information pertaining to this transaction on the Schedules.

c) Moreover, in 2015, Bluestone 184 LLC contributed approximately $2 million in equity investments, but thereafter took back $500,000 of those funds. The Schedules contain no explanation for the purpose of this transaction, nor do the Schedules detail what became of the withdrawn monies.

d) Likewise, in 2017, Bluestone 184 LLC contributed an additional $2,442,000 in equity investments, but withdrew $2,366,000. Again, there is no information in the Schedules that explains the purpose of this withdrawal.

e) MPE was paid a total of approximately $11.9 million in construction costs despite the fixed price of construction being set at $7,271,950 in both the PPM and Operating Agreement. The Schedules do not provide an explanation of where the payments in excess of the fixed construction costs went.

f) There were also numerous payments made from 184 East 64th Street Associates

---

[1] D'Alessio controls East 64th Holding by way of Bluestone 184 LLC, as Bluestone 184 LLC is the managing member of East 64th Holding. Specifically, Paragraph 6 of the Operating Agreement of East 64th Holding affords Bluestone 184 LLC, as manager with "full and complete authority, power and discretion" to control all of East 64th Holding's affairs, including full control over the financial affairs of East 64th Holding and the use of investment and funds acquired by it. Moreover, the PPM identified D'Alessio as the manager of East 64th Holding.

5

LLC ("East 64th Associates") to D'Alessio, the purpose and substance of which are not detailed in the Schedules. For example, during 2016, East 64th Associates made payments to D'Alessio totaling approximately $1.3 million. Similarly, during 2017, East 64th Associates made payments to D'Alessio totaling approximately $259,440.

g)    The Schedules also fail to explain why on two occasions, East 64th Associates paid monies from loans to D'Alessio. For example, on August 15, 2016, East 64th Associates received funds of approximately $2.2 million from a construction loan. That same day, East 64th Associates wrote a check to D'Alessio for $2.1 million. Likewise, on September 19, 2017, East 64th Holding received funds of $4.5 million from a refinanced bank loan. Two days later, on September 21, 2017, D'Alessio received two checks totaling $933,440 and $2,366,000 respectively.

9.    As to the 145-147 East 62nd Street Project:

a)    Investors contributed approximately $1,050,000 to 145-147 East 62nd Holding LLC ("145-147 East 62nd Holding"), an entity controlled by D'Alessio[2], yet the Schedules contain no explanation as to where this money actually went.

b)    Despite little to no construction taking place on the 145-147 East 62nd Street Project, 145-147 East 62nd Street Holding transferred $2,706,000 to MPE, an entity wholly-owned by D'Alessio, for "construction costs." The Schedules do not detail where this money went.

---

2 D'Alessio controls 145-147 East 62nd Holding by way of FCP 145 Holding LLC ("FCP"), as D'Alessio is a 100% owner of FCP and FCP is the managing member of 145-147 East 62nd Holding. Specifically, paragraph 6 of the Operating Agreement of 145-147 East 62nd Holding afforded FCP, as manager, with "full and complete authority, power and discretion" to control all of 145-147 East 62nd Holding's affairs, including full control over the financial affairs of 145-147 East 62nd Holding and the use of investments and funds acquired by it. The PPM also identified D'Alessio as a co-manager of 145-147 East 62nd Holding.

        c)        Additionally, the 145-147 East 62nd Street Project produced a negative cash flow of approximately $43,000. The Schedules do not detail as to how this $43,000 negative cash flow has been funded.

        10.        As to the 163-165 East 62nd Street Project:

        a)        Investors contributed approximately $1,900,000 to 163-165 East 62nd Street Holding LLC ("163-165 East 62nd Holding"), an entity in which D'Alessio is a 50.59% owner, yet the Schedules contain no explanation as to where this money actually went.

        b)        Despite doing no significant construction on the 163-165 East 62nd Street Project in 2015 and 2016, MPE, an entity in which D'Alessio is a 100% owner, was paid approximately $8.56 million by 163-165 East 62nd Street Associates LLC ("163-165 East 62nd Associates") for construction costs. Specifically, MPE received about $8.5 million as a "construction advance" and D'Alessio received in excess of $500,000 individually as a "construction expense." The Schedules are devoid of any information detailing these transactions.

        c)        Between 2015 and 2017, 163-165 East 62nd Associates received in excess of $49 million in funds for the 163-167 62nd Street Project, including $26,427,003 in investment funding from 163-167 East 62nd Holding. The Schedules are devoid of information pertaining to these transactions.

        11.        As to the 3 Sandpiper Court Project:

        a)        Investors contributed approximately $200,000 to 3 Sandpiper Court Holding LLC ("Sandpiper Court Holding"), an entity controlled by D'Alessio[3], yet the Schedules contain no

---

3  D'Alessio controls Sandpiper Court Holding by way of Bluestone Sandpiper LLC, as e D'Alessio is a 100% owner of Bluestone Sandpiper LLC and Bluestone Sandpiper LLC is the managing member of Sandpiper Court Holding. Specifically, paragraph 6 of the Operating Agreement of Sandpiper Court Holding, afforded Bluestone Sandpiper LLC, as manager, with "full and complete authority, power and discretion" to control all of Sandpiper Court Holding's affairs, including full control over the financial affairs of Sandpiper Court Holding and the use of

explanation as to where this money actually went.

b) In June and July, 2016, Sandpiper Court Holding issued checks to MPE, an entity 100% owned by D'Alessio, totaling $330,000. The Schedules contain no information pertaining to this transaction.

c) Moreover, per the PPM, Bluestone Sandpiper LLC, another entity 100% owned by D'Alessio was obligated to invest $225,250 in capital in Sandpiper Court Holding. As such, Bluestone Sandpiper LLC transferred $310,000 into Sandpiper Court Holding but then withdrew $200,000. The Schedules do not disclose the purpose of this transaction nor what the withdrawn monies were used for.

d) Similarly, in 2017, Bluestone Sandpiper LLC transferred $374,000 into Sandpiper Court Holding but then withdrew $97,000. Again, the Schedules do not contain any explanation as to why $97,000 was withdrawn and what became of those funds.

12. As to the 41-46 Middle Pond Road Project:

a) Investors contributed approximately $550,000 to 41-45 MPR Holding LLC ("MPR Holding"), an entity in which D'Alessio is a 97.20% owner, yet the Schedules contain no explanation as to where this money actually went.

b) In 2017, D'Alessio contributed $700,000 of the represented $1,520,000 as an equity investment in MPR Holding. Later, D'Alessio withdrew the full amount of the capital investment. The Schedules contain no explanation as to why this transaction occurred.

13. As to the East 67th Street Project:

a) Investors contributed approximately $737,000 to 227 67th Street Holding LLC

---

investments and funds acquired by it. The PPM also identified D'Alessio as manager of Sandpiper Court Holding.

8

("67th Holding"), an entity controlled by D'Alessio[4] yet the Schedules contain no explanation as to where this money actually went.

      b)      Per the PPM, the equity investment of Bluestone 67 LLC, an entity which D'Alessio has a 98.50% ownership interest in, was to be $958,000. Upon information and belief, instead of making an equity investment, D'Alessio and Bluestone 67 LLC moved money into and out of 67th Street Holding's account, depositing funds from unknown sources and then withdrawing those funds. The Schedules do not detail the source of said funds.

      c)      Moreover, on or around June 30, 2017, Bluestone 67 LLC withdrew $2,897,000 from East 67th Holding. The Schedules contain no explanation as to why this transaction occurred or what became of the withdrawn monies.

      14.      Furthermore, upon information and belief, D'Alessio transferred significant assets to Yvonne Schettino pursuant to a divorce agreement between them that are not fully disclosed on the Schedules.

      15.      As such, the Applicants seek to review financial documents of the Debtor and to investigate the acts, conduct, property, liabilities and financial condition of the Debtor.

### RELIEF REQUESTED

      16.      Any party in interest has a right to seek information concerning a debtor's assets and liabilities, particularly where that creditor is a significant creditor.

      17.      Here, the Applicants are significant creditors who are acknowledged in the Debtor's Schedule F. As such, their request should be given great weight.

---

4  D'Alessio controls East 67th Holding by way of Bluestone 67 LLC, as D'Alessio is a 98.50% owner of Bluestone 67 LLC and Bluestone 67 LLC is the managing member of East 67th Holding. Specifically, paragraph 6 of the Operating Agreement of East 67th Holding afforded Bluestone 67 LLC, as manager, with "full and complete authority, power and discretion" to control all of East 67th Holding's affairs, including full control over the financial affairs of East 67th Holding and the use of investments and funds acquired by it.

9

18. Bankruptcy Rule 2004 states in relevant part:

   (a) On motion of any party in interest, the Court may order the examination of any entity,

   (b) The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

19. The language of Bankruptcy Rule 2004 has been interpreted as providing latitude to conduct discovery broader in scope than that provided for under the Federal Rules of Civil Procedure, and has even been described as a valid "fishing expedition." See In Re Ecam Publications, Inc., 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991).

20. By this application, the Applicants seek to examine the Debtor to inquire as to, inter alia, the nature and status of his assets, liabilities, income and expenses.

## CONCLUSION

21. For all of the foregoing reasons, the Applicants respectfully request entry of an order, substantially in the form annexed hereto as **Exhibit H**, directing the Debtor to produce the documents and appear for examinations, together with such other and further relief as may be appropriate under the circumstances, for all of which no prior request has been made in this or any other Court.

Dated: White Plains, New York
June 6, 2018

      DELBELLO DONNELLAN WEINGARTEN
      WISE & WIEDERKEHR, LLP
      *Co-Counsel for Attis Properties, Inc.*
      One North Lexington Avenue, 11th Floor
      White Plains, New York 10601
      (914) 681-0200

      By: */s/ Dawn Kirby*
           Dawn Kirby

      ROSENFELD & KAPLAN, LLP
      *Co-Counsel for Attis Properties, Inc. and Counsel to Bonni Stanley, Marilyn Shendell, Douglas Scibelli, Sanley Company, RNG WEA LLC, Jacqueline Martinez, Keith Hummel, Philip Healy, Ellen Goldstein, Philip Goldstein, Stacey Gendels, Glen Feller, East 64th Street Realty Partners LLC, Robert Cicero, Angie Brown, Joshua Brown, Rella Fogliano, and Joseph Breda*
      1180 Avenue of the Americas, Suite 1920
      New York, New York 10036
      (212) 682-1400

      By: */s/ Tab Rosenfeld*
           Tab Rosenfeld