# EXHIBIT D

FILED: WESTCHESTER COUNTY CLERK 03/14/2018 12:57 PM
NYSCEF DOC. NO. 1
INDEX NO. 53635/2018
RECEIVED NYSCEF: 03/14/2018
18-22552-shl    Doc 33-4    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit D
Pg 2 of 26

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

--------------------------------------------------------------------x

RELLA FOGLIANO, MARILYN SHENDELL,
ATTIS PROPERTIES, INC., GLEN FELLER,
JOSHUA BROWN, ANGIE BROWN, PHILIP          Plaintiffs designate Westchester
GOLDSTEIN, ELLEN GOLDSTEIN, and SANLEY     County as the Place of Trial
COMPANY,

       Plaintiffs,    Index No.:

   -against-       **SUMMONS**

145-147 EAST 62nd STREET HOLDING LLC,
145-147 EAST 62nd ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO, ANTHONY
CARBONE, MICHAEL PAUL ENTERPRISES,
LLC, and FCP 145 HOLDING LLC,

       Defendants.

--------------------------------------------------------------------x

To the above named Defendants:

  **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and to serve a copy of your answer, or, if the verified complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the verified complaint.

Defendants' Addresses:  145-147 EAST 62nd STREET HOLDING LLC
       c/o Michael Paul Enterprises, LLC
       12 Water Street
       White Plains, New York 10601

       145-147 EAST 62nd ASSOCIATES LLC
       c/o Michael Paul Enterprises, LLC
       12 Water Street
       White Plains, New York 10601

       MICHAEL PAUL D'ALESSIO
       c/o Michael Paul Enterprises, LLC
       12 Water Street
       White Plains, New York 10601

FILED: WESTCHESTER COUNTY CLERK 03/14/2018 12:57 PM
INDEX NO. 53635/2018

NYSCEF DOC. NO. 1
18-22552-shl    Doc 33-4    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit D

RECEIVED NYSCEF: 03/14/2018

Pg 3 of 26

ANTHONY CARBONE
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

MICHAEL PAUL ENTERPRISES, LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

FCP 145 HOLDING LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
March 14, 2018

ROSENFELD & KAPLAN, LLP

By:    Tab K. Rosenfeld
Steven M. Kaplan
Nicole E. Meyer
1180 Avenue of the Americas, Suite 1920
New York, NY 10036
(212) 682-1400
*Attorneys for Plaintiffs*

2

FILED: WESTCHESTER COUNTY CLERK 03/14/2018 12:57 PM
NYSCEF DOC. NO. 2
INDEX NO. 53635/2018
RECEIVED NYSCEF: 03/14/2018

18-22552-shl    Doc 33-4    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit D
Pg 4 of 26

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------x

RELLA FOGLIANO, MARILYN SHENDELL,
ATTIS PROPERTIES, INC., GLEN FELLER,
JOSHUA BROWN, ANGIE BROWN, PHILIP
GOLDSTEIN, ELLEN GOLDSTEIN, and SANLEY
COMPANY,

Plaintiffs,

Index No.:

-against-

**VERIFIED COMPLAINT**

145-147 EAST 62nd STREET HOLDING LLC,
145-147 EAST 62nd ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO, ANTHONY
CARBONE, MICHAEL PAUL ENTERPRISES,
LLC, and FCP 145 HOLDING LLC,

Defendants.

-----------------------------------------------------------------x

Plaintiffs Rella Fogliano, Marilyn Shendell, Attis Properties, Inc., Glen Feller, Joshua

Brown, Angie Brown, Philip Goldstein, Ellen Goldstein, and Sanley Company (collectively, the

"plaintiffs") for their Verified Complaint against defendants 145-147 East 62nd Street Holding

LLC, 145-147 East 62nd Street Associates LLC, Michael Paul D'Alessio, Anthony Carbone,

Michael Paul Enterprises and FCP 145 Holding LLC (collectively, the "defendants"), allege as

follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiffs, each of whom are investors in a real

estate project devised by defendants located at 145-147 East 62nd Street, New York, New York

(the "East 62nd Street Project").

2.      The defendants purchased the property, which consisted of an existing townhouse, with a plan to gut renovate it into a new six-story building containing eight newly-constructed luxury units.

3.      Plaintiffs were induced by defendants to invest hundreds of thousands of dollars in the East 62nd Street Project, with such investments being made through 145-147 East 62nd Street Holding LLC, which D'Alessio promised would bring in an "equity return" of 10% per year and would allow for quick turn-around on a return of all capital invested.

4.      Rather than putting the funds toward their intended use, however, the defendants, upon information and belief, began siphoning the investor funds for personal use, co-mingling funds earmarked for the East 62nd Street Project with other projects owned and controlled by D'Alessio, using the assets of 145-147 East 62nd Street Holding LLC to finance other D'Alessio-controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the funds entrusted to him by investors.

5.      Having divested 145-147 East 62nd Street Holding LLC of its assets, and having looted and misused its funds, the defendants took on massive debt on the property, making a return to the investors an impossibility.  The defendants, nonetheless, continued to represent to the plaintiffs and other investors that the East 62nd Street Project could still be profitable, and refused to apprise investors as to the actual financial condition or the massive amount of debt that had been incurred.

6.      As a result of defendants' acts of financial defalcation, the East 62nd Street Project has become overextended.  Because of this, the defendants are seeking in this and in other D'Alessio-controlled projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiffs and other investors.

2

## PARTIES

7.      Plaintiff Rella Fogliano ("Fogliano") is a New York resident with a business address c/o The MacQuesten Companies, 438 Fifth Avenue, Pelham, NY 10803. Fogliano is a member of 145-147 East 62nd Street Holding LLC.

8.      Plaintiff Marilyn Shendell ("Shendell") is a New York resident with an address c/o Cornell Pace, Inc., 542 Main Street, New Rochelle, New York 10801. Shendell is a member of 145-147 East 62nd Street Holding LLC.

9.      Plaintiff Attis Properties, Inc. ("Attis") is a New York corporation with offices at 500 Mamaroneck Ave, Harrison, New York 10528. Attis was formerly known as S. & G. Gross Co., Inc. Attis is a member of 145-147 East 62nd Street Holding LLC.

10.     Plaintiff Glen Feller ("Feller") is a New Jersey resident with an address at 8 Jazz Way, Mt. Laurel, NJ 08054. Feller is a member of 145-147 East 62nd Street Holding LLC.

11.     Plaintiff Joshua Brown is a Connecticut resident with an address at 15 Tally Ho Lane, Stamford CT, 06905. Joshua Brown, together with his wife Angie Brown, is a member of 145-147 East 62nd Street Holding LLC.

12.     Plaintiff Angie Brown is a Connecticut resident with an address at 15 Tally Ho Lane, Stamford CT, 06905. Angie Brown, together with her husband Joshua Brown, is a member of 145-147 East 62nd Street Holding LLC.

13.     Plaintiff Philip Goldstein is a New York resident with an address at 3975 Sedgwick Avenue, Apt 4H, Bronx New York 10463. Philip Goldstein, together with his wife Ellen Goldstein, is a member of 145-147 East 62nd Street Holding LLC.

FILED: WESTCHESTER COUNTY CLERK 03/14/2018 12:57 PM
NYSCEF DOC. NO. 2
18-22552-shl    Doc 33-4    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit D
Pg 7 of 26
INDEX NO. 53635/2018
RECEIVED NYSCEF: 03/14/2018

14.      Plaintiff Ellen Goldstein is a New York resident with an address at 3975 Sedgwick Avenue, Apt 4H, Bronx New York 10463. Ellen Goldstein, together with her husband Philip Goldstein, is a member of 145-147 East 62nd Street Holding LLC.

15.      Plaintiff Sanley Company is a New York partnership with an address at c/o Anchin, Block & Anchin, LLP, Attn: Gene Greenfest, 1375 Broadway, 17th Floor, New York, NY 10018.  Sanley Company is a member of 145-147 East 62nd Street Holding LLC.

16.      Defendant 145-147 East 62nd Street Holding LLC ("East 62nd Holding") is a domestic limited liability company formed in 2016 as an investment vehicle to develop real property located at 145-147 East 62nd Street, New York, New York (the "Property").  East 62nd Holding lists its office for the conduct of business as c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601.  East 62nd Holding is the sole member of 145-147 East 62nd Street Associates LLC.

17.      Defendant 145-147 East 62nd Street Associates LLC ("East 62nd Associates") is a New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601.  East 62nd Associates holds title to the Property.

18.      Defendant Michael Paul D'Alessio is a New York resident with a business address at 12 Water Street, White Plains, New York 10601.

19.      Upon information and belief, defendant Anthony Carbone ("Carbone") is a New York resident with a business address at 12 Water Street, White Plains, New York 10601.

20.      Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited liability company with an address at 12 Water Street, White Plains, New York 10601. Upon information and belief, MPE is controlled by D'Alessio.

4

21.     Defendant FCP 145 Holding LLC ("FCP") is a domestic limited liability company formed in 2016.  Upon information and belief, FCP is controlled by Michael Paul D'Alessio.  FCP is the managing member of East 62nd Holding and maintains its offices at 12 Water Street, #204, White Plains, New York 10601.

## FACTS

22.     East 62nd Holding was created in 2016 by D'Alessio to acquire the Property through East 62nd Associates and to thereafter demolish the existing townhouse and construct in its place a new six-story building with eight luxury condominium units.

23.     East 62nd Holding is one of a number of real estate investment companies created by D'Alessio (the "D'Alessio Holding Companies").

24.     All of the D'Alessio Holding Companies utilize a similar structure, with D'Alessio or an affiliated company serving as the managing member; with construction to be done by an entity affiliated with D'Alessio, with D'Alessio's office, located at 12 Water Street, White Plains, New York 10601 serving as the office for the Company, with a promised "equity return" of 10% to 16% per year, with a quick turn-around on a return of all capital invested, and with D'Alessio's personal guarantee as to all construction cost overruns exceeding the amount of the fixed price contracts with D'Alessio's affiliated construction contract.

25.     Each of the D'Alessio Holding Companies are structured so that D'Alessio or his affiliated entities have control over the finances of the D'Alessio Holding Company and the use of the capital secured by such D'Alessio Holding Company.

26.     East 62nd Holding followed the investment structure used by D'Alessio.

27.     The East 62nd Holding's Confidential Private Placement Memorandum (the "PPM") stated that "The Company, through its wholly-owned subsidiary, the Owner, will

acquire title to the Property. It will thereafter commence gut renovation of the existing Building
. . ."

28.    The PPM stated that "Demolition of the existing Building and construction of the
new improvements is expected to start shortly after the Owner acquires title to the Property."

29.    The PPM stated that "The projected date for the completion of the renovations
and beginning of closings for the Units will be approximately 18-24 months after acquisition."

30.    In the PPM, FCP and D'Alessio represented that the "[p]rojected overall cost of
the Project is approximately $19,924,654.

31.    Exhibit 1 to the PPM was a *Pro Forma* statement that provided detail as to the
$19,924,654 Project cost. The *Pro Forma* listed the costs as" Land Purchase Price, $5,830,000;
Land Soft Cost, $2,678,400; Project Soft Costs, $3,013,200; and Project Hard Costs, $8,403,054.

32.    The *Pro Forma* also listed the source of funding for the Project Costs as: Senior
Debt, $9,000,000; Sponsor Equity Contribution $1,924,654; and "JV Investor's Equity
Contribution," $9,000,00.

33.    The PPM stated in Section J, paragraph 1, that the construction of the Project
would be done by MPE, an affiliate of FCP and D'Alessio, for a "fixed price of $8,403,054," and
provided that the "Mr. D'Alessio has personally guaranteed payment of hard costs of
construction in excess of the contract sum."

34.    The PPM provided that "Members of the Company, other than the Managing
Member . . . are entitled to (a) an Equity Return of 10% per annum, payable monthly on the
amount of their Capital Contribution, beginning as of the date such Capital Contribution is
actually fully paid to the Company . . . ; and (b) return of the full amount of their Capital
Contributions within 24 months."

35.     The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by Mr. D'Alessio."

36.     The PPM identified FCP as the managing member of East 62nd Holding, and identified D'Alessio and Anthony Carbone individually as co-managers.

37.     The PPM provided that while funds raised or acquired by East 62nd Holding could be maintained in a "general account," that such funds would "be in the Company control and may be used for Company purposes."

38.     The PPM did not disclose that the Property was subject to New York City rent control regulations and that it was occupied by tenants protected by those rent controlled regulations.

39.     The PPM did not disclose that demolition of the Property and the gut renovation could not commence until the tenants subject to New York City rent control regulations had vacated the Property.

40.     By letters dated September 22, 2016 and November 1, 2016 (the "Solicitation Letters"), D'Alessio writing on behalf of MPE, wrote to potential investors such as the plaintiffs, reiterating the figures set forth in the *Pro Forma*, and explicitly stating that "The townhouse will be **delivered vacant** at closing." (Emphasis added).

41.     At the time the Solicitation Letters were issued, the Property was occupied by tenants subject to New York City rent regulations.

42.     Upon information and belief, D'Alessio was aware at the time the Solicitation Letters were issued that the Property was occupied by tenants subject to New York City rent regulations.

7

43.     Based on the promises and representations made by D'Alessio, each of the plaintiffs invested in East 62nd Holding.

44.     On or about October 13, 2016, plaintiff Attis executed a subscription agreement for 2 "units" in East 62nd Holding at a total price of $100,000.

45.     On or about November 8, 2016, plaintiff Fogliano executed a subscription agreement for 10 "units" in East 62nd Holding at a total price of $500,000.

46.     On or about November 14, 2016, plaintiff Sanley Company executed a subscription agreement for 4 "units" in East 62nd Holding at a total price of $200,000.

47.     On or about November 15, 2016, plaintiff Shendell executed a subscription agreement for 2 "units" in East 62nd Holding at a total price of $100,000.

48.     On or about December 23, 2016, plaintiff Feller executed a subscription agreement for 1 "unit" in East 62nd Holding at a total price of $50,000.

49.     Plaintiffs Joshua and Angie Brown jointly executed a subscription agreement for 1"unit" in East 62nd Holding at a total price of $50,000.

50.     Plaintiffs Philip and Ellen Goldstein jointly executed a subscription agreement for 1 "unit" in East 62nd Holding at a total price of $50,000.

51.     Following each of the plaintiffs' entry into the subscription agreements, each of the plaintiffs and FCP thereafter entered into an Operating Agreement for East 62nd Holding (the "Operating Agreement"). D'Alessio, on behalf of FCP and individually as "Guarantor," signed the Operating Agreement. Carbone, on behalf of FCP, signed the Operating Agreement.

52.     Paragraph 6 of the Operating Agreement afforded FCP, as manager, with "full and complete authority, power and discretion" to control all of East 62nd Holding's affairs,

8

including full control over the financial affairs East 62nd Holding and the use of investments and funds acquired by it.

**Defendants' Financial Defalcations**

53.     D'Alessio structured the investment so that money from investors would flow into East 62nd Holding and would be funneled to East 62nd Associates, and then to MPE, purportedly for work to be done on the East 62nd Street Project.

54.     At the time that D'Alessio and the defendants were soliciting investments from the plaintiffs and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

55.     At the time that he was soliciting investments from the plaintiffs and others, D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the ability to satisfy his personal obligations, and could not timely complete any of his promised developments in order to return either capital to his investors or pay the promised preferential return.

56.     FCP was, according to the PPM, supposed to invest $1,924,654.

57.     The books and records of East 62nd Holding do not reflect any equity investment by FCP.

58.     On information and belief, the East 62nd Property remains partially occupied, making any "gut" renovation impossible.

59.     The books and records of East 62nd Holding reflect transfers of a total $2,706,000 to MPE for "construction costs."

60.     An invoice issued by MPE to East 62nd Holding dated December 19, 2016 reflected construction and construction-related charges of $810,000.

61.     An invoice issued by MPE to East 62nd Holding dated February 24, 2017 reflected "construction hard costs," of $1,896,000.

62.     Upon information and belief, little, if any, construction has occurred.

63.     East 62nd Holding has also expended $180,000 to buy out tenants protected by rent controlled regulations.

64.     The PPM and *Pro Forma* annexed to it identified the amount of funding needed to complete the East 62nd Street Project, including the need to obtain $9,000,000 in investor equity and $1,924,654 from FCP.

65.     The books and records of East 62nd Holding reflect member equity of only $3,250,000 and no FCP equity.

66.     On or about April 3, 2017, MPE sent an "Investor Newsletter" via email to the investors stating "we have vacated the two commercial tenants and one rent stabilized tenant and have obtained the permit for the new building" and "are evaluating the next actions regarding the few remaining residential tenants."

67.     On or about July 17, 2017, MPE sent another "Investor Newsletter" via email to the investors, reiterating that two commercial tenants and one rent stabilized tenant had been vacated and that MPE is "evaluating the next actions regarding the few remaining residential tenants" and stating that MPE has "filed a demolition permit with the city and are awaiting approval."

68.     In November, 2017 the defendants advised plaintiffs and other investors that East 62nd Holding is suffering from a "liquidity" problem.

69.     In this November, 2017 communication, the defendants stated the Property was occupied by tenants subject to New York City rent control regulations, and that "[e]xcluding

preferred dividends the project still produces a negative cash flow of $43,000 and the rent

controlled structure will continue to require funding deficits."

70.     The defendants provided no information as to how this $43,000 negative cash

flow has been funded (or why it was not accounted for in the *Pro Forma*), how the invested

proceeds had been utillized, or how East 62nd Holding was able to provide an equity return in

the absence of revenue.

71.     At no time did defendants disclose that $2,706,000 had been paid to MPE for

construction which was not done.

72.     At no time did defendants disclose that insufficient capital had been raised to fully

fund the East 62nd Street Project.

73.     At no time did defendants disclose that FCP had not paid any of its equity

contribution.

74.     By letter dated February 26, 2018 (the "February Letter"), D'Alessio, writing on

behalf of East 62nd Holding, stated his view that continued efforts to operate the Property no

longer made economic sense and that the "Company lacked funds with which to pay the debt

service due February 1st and the mortgagee has given notice of its intention to foreclose its

mortgage." The letter went on to state that the mortgagee has proposed accepting deeds to the

property in lieu of foreclosure and cancelling D'Alessio's personal guarantee of the mortgage,

and that East 62nd Holding intended to accept that offer on or about March 5, 2018.

75.     The February Letter stated that "Inability to vacate the rental tenants and other

issues have prolonged the development, driving up the Company's carrying costs, including

payment of mortgage debt service and Investors' Equity Return payments."

11

FILED: WESTCHESTER COUNTY CLERK 03/14/2018 12:57 PM
NYSCEF DOC. NO. 2
18-22552-shl   Doc 33-4   Filed 06/08/18   Entered 06/08/18 16:17:13   Exhibit D
Pg 15 of 26
INDEX NO. 53635/2018
RECEIVED NYSCEF: 03/14/2018

76.     Upon information and belief, defendants have or are about to surrender the Property to the bank or otherwise dispose of the Property at a below-market cost.

77.     Upon information and belief, substantial funds were transferred from East 62nd Associates to MPE, where such funds were co-mingled with funds of other D'Alessio Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled by him.

78.     Upon information and belief, funds were taken by the defendants for construction that did not take place.

79.     Upon information and belief, the defendants utilized the funds of East 62nd Holding to pay for fictitious expenses in order to conceal the misuse of funds belonging to East 62nd Holding.

80.     Upon information and belief, and given the lack of an available revenue source, D'Alessio used funds invested by the plaintiffs and earmarked for the East 62nd Street Project for his own personal use.

81.     Over the past weeks, D'Alessio has liquidated or sold properties of other D'Alessio-sponsored investments at a fraction of the value he had placed on such properties and in a manner designed to simply free D'Alessio and his managing member entity of any guarantees to the first mortgagor, and to divest investors of 100% of their capital.

**FIRST CAUSE OF ACTION**
(Fraud as Against Defendants D'Alessio, Carbone, East 62nd Holding, and FCP)

82.     Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 81 above, as if fully set forth herein.

83.     To induce the plaintiffs to invest in East 62nd Holding, D'Alessio, on behalf of himself and on behalf of Carbone, East 62nd Holding and FCP, made multiple misrepresentations, including, without limitation:

12

    a.  That the funds raised by East 62nd Holding would be used exclusively on behalf of East 62nd Holding and would not be co-mingled with funds belonging to other D'Alessio-sponsored investments, or used for any other purposes;

    b.  That demolition of the East 62nd Street Property would start shortly after title was acquired;

    c.  That the Project would be completed within 18 to 24 months;

    d.  That the full capital of each investor would be returned within 24 months;

    e.  That D'Alessio personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of the all preferred returns; and

    f.  The Property would be delivered to D'Alessio vacant at closing.

84.    The foregoing representations were false and D'Alessio, on behalf of himself, Carbone, East 62nd Holding, and FCP, made these representations knowing them to be false.

85.    At the time that he was making these statements to induce investments in East 62nd Holding, D'Alessio knew:

    a.  that money raised by East 62nd Holding would be comingled with funds raised for other D'Alessio-sponsored investments and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

    b.  that demolition could not take place soon after closing because the East 62nd Street Property was occupied by tenants subject to New York City rent control regulations and who could not be removed from the premises absent agreement with them;

    c.  that the East 62nd Street Project could not be completed within 18 to 24 months because the premises were occupied by tenants protected by New York city rent

FILED: WESTCHESTER COUNTY CLERK 03/14/2018 12:57 PM
NYSCEF DOC. NO. 2
18-22552-shl    Doc 33-4    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit D
Pg 17 of 26
INDEX NO. 53635/2018
RECEIVED NYSCEF: 03/14/2018

control regulations and no construction could commence until such tenants had vacated the Property;

d.  that the East 62nd Street Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible within 24 months; and

e.  that D'Alessio lacked the ability to satisfy his personal guarantee, and thus that the promise of D'Alessio's personal guarantee was a fiction which provided no protection for investors.

86.    D'Alessio, on behalf of himself, Carbone, East 62nd Holding, and FCP, made these representations to the plaintiffs in order to induce them to invest the East 62nd Street Project.

87.    Plaintiffs reasonably relied on the accuracy of the information provided to them by D'Alessio, on behalf of himself, Carbone, East 62nd Holding, and FCP.

88.    As a direct and proximate result of the fraud, plaintiffs have been damaged in an amount to be determined at trial, but not less than $3,000,000, with interest thereon.

89.    The conduct of East 62nd Holding, D'Alessio, Carbone, and FCP was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### SECOND CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

90.    Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 89 above, as if fully set forth in full herein.

91.    Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiffs as described above.

92.     D'Alessio devised the overall objective of the conspiracy, and each of the other defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts in furtherance of the fraudulent scheme.

93.     The objective of the conspiracy was to induce the plaintiffs to invest in East 62nd Holding based on the false and fraudulent representations set forth above.

94.     Each of the defendants participated fully in the conspiracy, as the funds fraudulently induced were transferred from East 62nd Holding to East 62nd Associates and then to MPE, which thereafter wrongfully utilized such funds to make payments to D'Alessio and to satisfy D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities, unrelated to East 62nd Holding or the East 62nd Street Project.

95.     In furtherance of this conspiracy, D'Alessio, acting on behalf of each of the defendants, made the false and fraudulent statements set forth above, and thereafter conspired to loot the funds invested by the plaintiffs.

96.     Through concerted action, as agreed upon among associated companies, associates and managers, as described above, defendants in fact engaged in conduct violative of plaintiffs' rights.

97.     Defendants intended these actions to occur and intended to cause injury to plaintiffs as a part of their conspiratorial scheme.

98.     By virtue of the formation and operation of this unlawful conspiracy, and as a consequence of the above-described wrongful acts and conduct and the harm caused to plaintiffs, defendants are liable for the above-described acts committed by each conspirator.

99.     As a result of these acts and conduct, plaintiffs have suffered and will continue to suffer financial harm. By virtue of the foregoing, plaintiffs are entitled to recover damages in an

15

amount to be determined at trial, but believed to be in excess of $3,000,000, plus interest and costs.

100.    Defendants' conduct as, described above, was willful, wanton, and undertaken in reckless disregard of the plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### THIRD CAUSE OF ACTION
(Unjust Enrichment against all D'Alessio, Carbone, East 62nd Associates, and MPE)

101.    Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 100 above, as if fully set forth in full herein.

102.    Defendants D'Alessio, Carbone, East 62nd Associates, and MPE caused funds that were intended for the development of the East 62nd Street Project to be diverted for improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

103.    Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, and other funds wrongfully taken from East 62nd Holding.

104.    By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiffs.

105.    The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them. No other remedy at law can adequately compensate plaintiffs for the economic damages resulting to them from the defendants' wrongful actions as alleged herein.

106.     By virtue of the foregoing, plaintiffs seek damages in an amount to be determined at trial, but believed to be in excess of $3,000,000, plus interest and costs.

## FOURTH CAUSE OF ACTION
### (Conversion against all Defendants)

107.     Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 106 above, as if fully set forth in full herein.

108.     Plaintiffs invested funds into East 62nd Holding for the purposes of construction and development of the East 62nd Street Project and to secure the returns that were promised.

109.     Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiffs.

110.     As a proximate result of defendants' acts of conversion, plaintiffs have been deprived of their rights, and have suffered damages in an amount to be determined, but believed to be in excess of $3,000,000, plus interest and costs.

111.     By virtue of the foregoing, plaintiffs seek damages from defendants in an amount to be determined at trial, but believed to be in excess of $3,000,000, plus interest and costs.

## FIFTH CAUSE OF ACTION
### (Breach of Guaranty against D'Alessio)

112.     Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 111 above, as if fully set forth herein.

113.     The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

114.     At all times, D'Alessio has served as the manager of East 62nd Holding.

115.    D'Alessio executed the Operating Agreement of East 62nd Holding in an individual capacity as guarantor, guaranteeing the payment of the both the investor equity as well as the return on money invested.

116.    East 62nd Holding has discontinued the payment of the return on investor equity.

117.    There remains due and owing to the plaintiffs unpaid returns on the equity invested in an amount to be determined at trial.

118.    There remains due and owing to the plaintiffs unrepaid investor capital of at least $1,050,000.

119.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against D'Alessio personally in an amount to be determined at trial, but believed to be excess of $1,200,000, plus interest and costs.

## SIXTH CAUSE OF ACTION
(Breach of Contract as against East 62nd Holding)

120.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 119 above, as if fully set forth herein.

121.    The Operating Agreement of East 62nd Holding constitutes a valid and binding contract between plaintiffs and defendant East 62nd Holding.

122.    Plaintiffs have performed all of their material obligations under that contract.

123.    East 62nd Holding has breached its obligations to plaintiffs under the contract by failing to pay the returns on equity invested.

124.    East 62nd Holding has breached its obligations to plaintiffs under the contract by failing to repay investor capital of at least $1,050,000.

18

125.  By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against East 62nd Holding in an amount to be determined at trial, but believed to be excess of $1,200,000, plus interest and costs.

### SEVENTH CAUSE OF ACTION
(For a Constructive Trust against D'Alessio, Carbone, East 62nd Associates, and MPE)

126.  Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 125 above, as if fully set forth herein.

127.  Pursuant to the terms of the Operating Agreement, D'Alessio and FCP were fiduciaries obligated to act in the best interest of East 62nd Holding and its investors.

128.  D'Alessio and FCP, on behalf of themselves and Carbone, East 62nd Associates, and MPE, expressly promised that they would utilize the funds invested by plaintiffs and other investors, and the funds obtained from other sources, solely for the development of the East 62nd Street Project and not to enrich themselves.

129.  The plaintiffs invested in East 62nd Holding in reliance on the representations made to them in the PPM and by D'Alessio and FCP.

130.  D'Alessio has threatened to turn over the 62nd Street Property to its secure lenders simply to relieve himself of potential liability to such lenders, and to divest the plaintiffs and all other investors of 100% of their equity.

131.  Upon information and belief, D'Alessio is attempting to sell the Property to pay off his obligations and to divest the plaintiffs and all other investors of 100% of their equity.

132.  A constructive trust should be imposed to prevent the defendants from being unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to satisfy their obligations while simultaneously stripping the plaintiffs of all of their capital and all of their interest in the Property.

19

FILED: WESTCHESTER COUNTY CLERK 03/14/2018 12:57 PM
NYSCEF DOC. NO. 2
INDEX NO. 53635/2018
RECEIVED NYSCEF: 03/14/2018

18-22552-shl    Doc 33-4    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit D
Pg 23 of 26

133.    Accordingly, a constructive trust should be imposed with respect to the Property and any proceeds derived from the sale of said Property.

### EIGHTH CAUSE OF ACTION
(Preliminary and Permanent Injunction as Against All Defendants)

134.    Plaintiffs repeat, reallege, and incorporate paragraphs 1 through 133 above as if fully set forth herein.

135.    In furtherance of his fraudulent scheme, D'Alessio and the other defendants have left the Property financially overextended, are seeking to dispose of the Property at a massive discount and in a manner designed to rid D'Alessio and his managing member entity of any guarantees to the first mortgagor, and thereby to divest the investors of their capital.

136.    Unless defendants are restrained and enjoined from the transfer and/or sale of the Property, plaintiffs will suffer irreparable harm, in that plaintiffs will be divested of their capital interest in the Property.

137.    Plaintiffs have no adequate remedy at law.

138.    Accordingly, plaintiffs are entitled to an Order preliminary and permanently enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.    On the First Cause of Action as against defendants D'Alessio, Carbone, East 62nd Holding, and FCP, awarding plaintiffs damages in an amount to be determined at trial, but not less than $3,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

b.    On the Second Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but not less than $3,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

c.      On the Third Cause of Action as against defendants D'Alessio, Carbone, East 62nd
Associates, and MPE, awarding plaintiffs damages in an amount to be determined at trial, but not
less than $3,000,000, with interest thereon;

d.      On the Fourth Cause of Action, awarding plaintiffs damages in an amount to be
determined at trial, but not less than $3,000,000, with interest thereon;

e.      On the Fifth Cause of Action as against D'Alessio, awarding plaintiffs damages in
an amount to be determined at trial but not less than $1,200,000, with interest thereon;

f.      On the Sixth Cause of Action as against East 62nd Holding, awarding plaintiffs
damages in an amount to be determined at trial but not less than $1,200,000, with interest
thereon;

g.      On the Seventh Cause of Action as against defendants D'Alessio, Carbone, East
62nd Associates, and MPE, imposing a constructive trust with respect to the real property located
at 145-147 East 62nd Street, New York, New York, or with respect to any proceeds paid as a
result of any sale of the real property located at 145-147 East 62nd Street, New York, New York;

h.      On the Eighth Cause of Action, issuing an Order preliminarily and permanently
enjoining and restraining defendants from selling or otherwise transferring the real property
located at 145-147 East 62nd Street, New York, New York;

i.      Awarding the costs and fees, including reasonable attorneys' fees, to the
plaintiffs; and

j.      Awarding such other and further relief as is just and proper.

21

FILED: WESTCHESTER COUNTY CLERK 03/14/2018 12:57 PM
NYSCEF DOC. NO. 2

INDEX NO. 53635/2018
RECEIVED NYSCEF: 03/14/2018

18-22552-shl    Doc 33-4    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit D
Pg 25 of 26

Dated: New York, New York
        March 14, 2018

                                    ROSENFELD & KAPLAN, LLP

                        By:    _____
                               Tab K. Rosenfeld
                               Steven M. Kaplan
                               Nicole E. Meyer
                               1180 Avenue of the Americas
                               Suite 1920
                               New York, New York 10036
                               (212) 682-1400
                               *Attorneys for the plaintiffs*

## VERIFICATION

STATE OF NEW YORK      )
                              ) ss.:
COUNTY OF WESTCHESTER   )

MICHAEL KOHN, being duly sworn, deposes and says:

I am an officer of the plaintiff Attis Properties, Inc. in this action. I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

Michael Kohn

Sworn to me before me this
14th day of March, 2018

Notary Public

**WANDA R. REYNOLDS**
Notary Public, State of New York
No. 01RE5015765
Qualified in Westchester County
Commission Expires 7-26-__2021__